# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3448

_____

Westchester Surplus Lines Insurance Company; Amlin Corporate Member, Ltd.;
ACE Capital Limited; Catlin Syndicate Limited; ACE Capital V Limited,

*Plaintiffs - Appellees*,

v.

Interstate Underground Warehouse & Storage, Inc.,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2019
Filed: January 3, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Interstate Underground Warehouse & Storage operates an underground storage facility in a cave that formerly housed a limestone mine near Kansas City. In 2014, Interstate experienced a series of so-called "dome-outs," in which layers of rock destabilized, detached, and collapsed from above into the cave.

Interstate's primary insurer, Westchester Surplus Lines Insurance Company, sought a declaratory judgment that Interstate's claimed losses relating to the dome-outs were not covered under the relevant insurance policy. Four excess insurers, Amlin, ACE Capital Limited, Catlin, and ACE Capital V Limited, also sought a declaration that there was no coverage under a policy that they issued to Interstate. Interstate counterclaimed against Westchester and alleged a vexatious refusal to pay its claim under Missouri Revised Statutes § 375.420.

The district court[1] granted summary judgment for the insurers on the ground that the cause of losses was not "building decay" within the meaning of the primary policy, and that there was thus no coverage under either policy. We agree with this conclusion and therefore affirm the judgment.

The earth in the area of Interstate's facility consists of three layers of rock: the deepest layer is Bethany Falls limestone; above that is Galesburg and Stark shale strata; at the top is Winterset limestone. Bethany Falls limestone, the lowest layer, is composed of three "zones" of limestone. The bottom zone, deepest within the earth, is the high-quality limestone that is desirable for mining. The middle zone is usually left in place by miners to form a smooth and stable natural "ceiling" within a mine. The upper zone is mostly limestone rubble that has resulted from erosion occurring since this layer was formed over 300 million years ago. Although the extent of a "rubble zone" varies, Interstate's expert suggested that the rubble zone could extend downward from the Galesburg and Stark strata, through the mostly-rubble upper zone, and, in some areas, into the middle zone above the natural ceiling.

In the district court, Interstate confusingly described two different features of the earth as a "ceiling" of the facility. When the cave used by Interstate was left

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

behind from a mining operation, an unimproved limestone slab from the middle zone of the Bethany Falls limestone formed a natural ceiling. Interstate sometimes describes this limestone slab as the "ceiling," *see* App. 5 ¶ 16, 123 ¶ 16; 9 ¶ 40, 126 ¶ 40; 133-35; 3626; we will refer to this limestone slab as the "natural ceiling." Interstate reinforced this natural ceiling by drilling steel bolts into the layers of rock above, and securing the bolts in place with resin epoxy. Elsewhere in its submissions, Interstate describes all three zones of rock penetrated by the steel bolts as the "ceiling" of the facility. App. 3618. The district court likewise used both meanings of the term "ceiling." R. Doc. 139, at 3, 5.

The dome-outs allegedly arose from activity relating to a man-made freezer within Interstate's storage facility. The facility included two freezers that were created by isolating and insulating designated spaces within the cave, and then cooling those spaces. The process of creating the freezers also froze the moisture within the rubble zone above the designated freezer spaces. In 2012, one of these freezers was decommissioned. Interstate's expert concluded that efforts to "salvage" or repair this freezer—by erecting new walls within the malfunctioning freezer to better isolate the space—resulted in a series of freeze-thaw cycles that destabilized the rubble zone above and eventually caused four dome-outs during 2014. During these occurrences, the natural ceiling of the facility, along with certain layers of rock above that limestone slab, detached and fell into the area below. App. 5 ¶ 16, 123 ¶ 16; 9 ¶ 40, 126 ¶ 40; 133-35; 3626.

Interstate submitted claims to Westchester for its dome-out related losses. The insurance policy that Westchester issued to Interstate included coverage for collapse of a "building" caused by "building decay" under certain circumstances. The excess policy incorporated the terms and conditions of the primary policy. Westchester investigated the claims and ultimately denied coverage. This litigation followed. We review the district court's interpretation of the Westchester policy *de novo* and apply

Missouri substantive law. *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018).

Under Missouri law, general rules of contract interpretation govern the interpretation of insurance policies. *See Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). Policy terms are given "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation omitted). The insured bears the burden of showing that the claimed loss or damage is covered under the policy. *See Am. Fam. Mut. Ins. Co. v. Coke*, 413 S.W.3d 362, 368 (Mo. Ct. App. 2013).

The Westchester insurance policy generally excludes coverage for loss or damage caused by collapse, but the exclusion does not apply to a provision entitled "Additional Coverage—Collapse." That part of the policy establishes coverage for "direct physical loss or damage to Covered Property, caused by abrupt collapse of a building . . . if such collapse is caused by . . . building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse."

Westchester accepts for purposes of appeal that Interstate's facility is a "building" within the meaning of the policy. That term is not defined in the policy; its ordinary meaning is "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls." *Webster's Third New International Dictionary* 292 (2002). As applied to this situation, therefore, the building is the facility constructed within the cave.

This appeal turns on whether the collapse that damaged the "building" was caused by "building decay." It is undisputed that the relevant "decay" occurred in the

rubble zone above the natural ceiling of the cave. So the dispositive question is whether decay in the rubble zone was "building decay."

As we have described, when Interstate constructed its facility, a limestone slab from the middle zone of the Bethany Falls limestone provided a natural ceiling. The rubble zone was above this natural ceiling. To ensure that the slab of limestone from the middle zone did not detach and fall into the facility, Interstate inserted steel bolts through the natural ceiling, through the rubble zone, and into the more stable layers of rock above the rubble.

Interstate posits that when it installed reinforcing bolts through the rubble, the rubble zone became part of the "building," such that future decay in the rubble zone qualified as "building decay." The bolting process, according to Interstate, adhered the rock layers together—from the limestone that formed the natural ceiling, through the rubble zone, into the Galesburg and Stark shale, and, in some areas, into the Winterset limestone above—such that these several layers all constituted part of the "building."

We are not convinced that the bolting process transformed the rubble zone and other earth around the bolts into part of the "building." Rather, the bolts reinforced the facility's natural ceiling, much like pilings beneath a large building provide support to that structure. Just as the soil or rock surrounding a skyscraper's deepest pilings ordinarily would not be considered part of a building, the rubble zone above Interstate's facility did not become part of the "building" by virtue of reinforcement bolts protruding through that zone.

Therefore, when we apply meaning that would be attached by an ordinary person of average understanding, we conclude that the rubble zone above the natural ceiling of Interstate's facility was not part of the "building." Because the decay that caused the dome-outs in this case occurred within the rubble zone, it follows that the

dome-outs were not caused by "building decay" within the meaning of the policy. Interstate complains that this conclusion renders its collapse coverage illusory, but that is not so.  A collapse caused by decay in a part of the building, such as the limestone slab making up the facility's natural ceiling, could result in coverage.  But decay in the rubble zone that triggered the collapses here was not "building decay."

For these reasons, Westchester and the excess insurers were entitled to the declaratory judgment that no coverage existed under their respective policies.  The district court properly dismissed Interstate's claims against Westchester for vexatious refusal to pay.  The judgment of the district court is affirmed.

_____