# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3419

_____

Michael G. Vogt

*Plaintiff - Appellee*

v.

State Farm Life Insurance Company

*Defendant - Appellant*

------------------------------

Washington Legal Foundation; Chamber of Commerce of the United States of
America; American Council of Life Insurers

*Amici on Behalf of Appellant(s)*

Public Citizen

*Amicus on Behalf of Appellee(s)*

_____

No. 18-3434

_____

Michael G. Vogt

*Plaintiff - Appellant*

v.

State Farm Life Insurance Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 13, 2019
Filed: June 26, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

This case comes to us as a class action by over 25,000 life insurance policyholders who allege that State Farm Life Insurance Company (State Farm) impermissibly included non-listed factors in calculating Cost of Insurance (COI) fees assessed on life insurance policies. Following a jury trial, the jury returned a $34 million verdict in the class's favor. State Farm appeals, asserting that the district court committed various errors, including with respect to summary judgment, class certification, and evidentiary rulings. Michael Vogt, the named plaintiff, cross appeals, arguing that the district court erroneously denied the class prejudgment interest. Having jurisdiction under 28 U.S.C. § 1291, we affirm with respect to State Farm's appeal and reverse and remand with respect to Vogt's cross appeal.

I.

In 1999, then 54-year-old Vogt purchased a State Farm flexible premium adjustable whole life insurance policy. In contrast to a standard life insurance policy,

this type of policy provides benefits in addition to the typical death benefits, which results in the policy including investment, savings, or interest-bearing components. The terms of the policy explicitly allowed State Farm to make monthly deductions from the policy for "(1) the cost of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." Specifically as to the COI, the policy provides:

> **Monthly Cost of Insurance Rates.** These rates for each policy year are *based on the Insured's age on the policy anniversary, sex, and applicable rate class.* A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

R. Doc. 167-2, at 11 (emphasis added). These enumerated factors are so-called "mortality factors" because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate of a policyholder based on his specific circumstances.

Vogt surrendered the policy in 2013. Dissatisfied with the COI fees, which increased throughout the time he held the policy, Vogt consulted an attorney and an actuarial expert, who determined that State Farm had been using non-enumerated factors unrelated to a policyholder's mortality risk to calculate the monthly COI fees. These "non-mortality factors" included taxes, profit assumptions, investment earnings, and capital and reserve requirements. Vogt asserts that, by including non-mortality factors in the COI rates, State Farm deducted from the monthly premium payments more than what the policy stated would be included in the COI fees. Vogt thereafter filed suit in 2016, asserting breach of contract and conversion claims against State Farm based on State Farm's alleged use of unauthorized, non-mortality

factors to calculate his COI fees, which it collected during the time that Vogt held the life insurance policy. State Farm then moved for summary judgment, arguing, in relevant part, that the policy language regarding the COI did not limit State Farm to calculating the COI based on the specified factors only. The district court denied State Farm's motion, concluding that no reasonable person would understand that State Farm would use non-listed factors to calculate the COI when the policy stated the COI would be "based on" enumerated factors. The district court determined that, at a minimum, the policy was ambiguous and should be construed against State Farm.

Vogt then sought to have a class certified composed of similarly situated policyholders. The proposed class members were individuals who obtained life insurance from State Farm between 1994 and 2004 under the same policy form as was used for Vogt. Over State Farm's objection, the district court certified a class of approximately 25,000 individuals who currently or previously owned a State Farm-issued life insurance policy of the same form in the State of Missouri.

The district court held a pretrial hearing, during which it invited Vogt to make an oral motion for summary judgment. As relevant, Vogt moved for summary judgment on issues of liability and State Farm's statute-of-limitations defense. The district court granted the motion in part, concluding that Vogt had established liability for breach of contract, leaving damages as the only issue to be tried to the jury, and concluding that as a matter of law, Vogt's claims were not time barred. The district court denied, however, Vogt's motion for summary judgment on the conversion claim based on a genuine dispute as to an identifiable corpus converted from each class member, noting that "[w]ithout establishing the corpus that State Farm purportedly converted from each member of the class, Plaintiff cannot establish conversion." R. Doc. 335. In other rulings, the district court ordered that State Farm was precluded from referencing the maximum COI rates under the policy and presenting evidence that State Farm never exceeded this amount. The district court similarly precluded State Farm's actuarial expert from testifying about an actuarial memorandum that

State Farm asserted was relevant to the question of whether it pooled mortality rates, a process by which all policyholders of the same age, sex, and rate class have their policy duration blended or "pooled" together, regardless of how long individual policyholders have actually held the policies. Finally, the district court allowed Vogt to introduce damages models to the jury, overruling State Farm's objection that the models had not been disclosed to State Farm until shortly before trial.

At the close of the evidence at trial, State Farm moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which the district court denied. The jury returned an award of damages for the class in the amount of $34,333,495.81. State Farm moved to decertify the class, arguing that some class members did not suffer damages and that conflicts existed among the class members. The district court denied the motion. State Farm then filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and for a new trial under Federal Rule of Civil Procedure 59. In its motion for judgment as a matter of law, State Farm challenged Vogt's damages models as unreliable, speculative, and invalid, arguing that they could not support the jury's verdict. In its motion for new trial, State Farm cited several erroneous evidentiary rulings warranting a new trial, the district court's granting of an oral motion for summary judgment, and the district court's jury instruction on the conversion claim. The district court denied both motions. The district court also denied Vogt's motion for an amended judgment insofar as it sought an award of prejudgment interest based on its finding that the parties had contractually agreed to an interest rate, but granted the motion insofar as it sought to add a class definition, to award postjudgment interest, and to approve allocation of damages. The district court then entered judgment, slightly reducing the jury award to $34,322,414.84 to reflect opt-outs received from class members after the commencement of the jury trial.

State Farm appeals and Vogt cross appeals. The parties agree that Missouri law applies in this diversity action.

II.

State Farm's central argument before the district court and again on appeal involves the interpretation of the clause in the insurance policy that allows State Farm to collect COI fees from policyholders. State Farm asserts that the grant of partial summary judgment, based upon the district court's conclusion that the policy language did not allow State Farm to formulate the COI based on factors in addition to those expressly listed in the policy, was erroneous. "We review de novo a district court's grant of summary judgment, viewing all facts and making all reasonable inferences in the light most favorable to the nonmoving party." Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric., 643 F.3d 1142, 1146 (8th Cir. 2011). With respect to the interpretation of the insurance policy, applying Missouri substantive law, "[w]e review the district court's interpretation of the [State Farm] policy *de novo*." Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc., 946 F.3d 1008, 1010 (8th Cir. 2020).

"Under Missouri law, general rules of contract interpretation govern the interpretation of insurance policies. Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." Id. (citations and internal quotations marks omitted). The central issue in interpreting contract language is determining whether any ambiguity exists, which occurs "where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters v. Emp'rs Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (en banc). "Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer." Id. (citations omitted).

The focus of the dispute between the parties is whether the phrase "based on," as used in the COI provision stating that the "rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," allowed

-6-

State Farm to include other non-mortality factors in the calculation of the COI rates. State Farm argues that this provision allows it to include other factors, while Vogt asserts that it unambiguously does not. We conclude that, at the very least, the phrase is ambiguous, and must be construed in favor of Vogt.

The policy contains no definition for the phrase "based on," so we rely on the plain and ordinary meaning of the phrase. See CitiMortgage, Inc. v. Equity Bank, N.A., No. 4:15-CV-230-SPM, 2017 WL 5564532, at *3 (E.D. Mo. Nov. 20, 2017) (noting that policy did not define term and thus following general Missouri contract interpretation principle that "[t]he parties' intent is presumed to be expressed by the plain and ordinary meaning of the language of the contract" (quoting Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 226 (Mo. 2013))). Looking at the language of the provision alone, we conclude that the phrase "based on" is at least ambiguous because a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated "based on" listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation.

State Farm asserts that in examining this phrase, we should rely on Norem v. Lincoln Benefit Life Co., 737 F.3d 1145 (7th Cir. 2013), which held that the phrase "based on" in a life insurance contract did not imply exclusivity of factors. Specifically, the court explained that "neither the dictionary definitions nor the common understanding of the phrase 'based on' suggest that Lincoln Benefit is prohibited from considering factors beyond sex, issue age, policy year, and payment class when calculating its COI rates." Id. at 1150; see also Mai Nhia Thao v. Midland Nat'l Life Ins. Co., 549 F. App'x 534, 537 (7th Cir. 2013) ("Norem . . . holds that when the policy says that the monthly cost of insurance rate will be 'based on' specified factors, it does not mean that the rate will be based exclusively on those factors."). Relying on Norem, State Farm urges us to conclude that the plain and ordinary meaning of "based on" does not imply exclusivity. But Norem

acknowledges that other courts have reached the opposite conclusion. 737 F.3d at 1149 (noting that "[s]everal state and district courts have considered similar clauses in life insurance policies and reached divergent results" and citing same). That several courts have examined the issue in very similar circumstances and have reached differing conclusions supports the conclusion that the phrase is ambiguous.

State Farm also cites other cases where the court considered the meaning of the phrase "based on," but as those cases involve the phrase as used in the United States Sentencing Guidelines, we do not find them instructive in construing this insurance contract. See Appellant's Br. 33-34 (citing Koons v. United States, 138 S. Ct. 1783, 1788 (2018) and Hughes v. United States, 138 S. Ct. 1765, 1775, 1778 (2018)). Finally, State Farm asserts that, because it never charged in excess of the maximum rates stated in the contract for the COI, it cannot have breached the contract, regardless of the interpretation of the phrase "based on." We reject this contention. That State Farm did not violate the contract in another manner does nothing to prove that it did not violate the contract by including impermissible factors in calculating the COI. If State Farm wanted the freedom to collect a COI fee based on factors other than those enumerated in the policy, it could have drafted the policy language to unambiguously achieve this aim. See Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 211 (Mo. 1992) (en banc) ("[A]s the drafter of the insurance policy, the insurance company is in the better position to remove ambiguity from the contract.").

For the foregoing reasons, we conclude that the phrase "based on" in the COI provision is at least ambiguous and thus must be construed against State Farm. The district court did not err in construing the policy language in this manner and granting summary judgment to Vogt on issues of liability.

## III.

State Farm also asserts that the district court erred by granting Vogt's oral motion for summary judgment on State Farm's statute-of-limitations defense. Again, we review a grant of summary judgment de novo, "viewing all facts and making all reasonable inferences in the light most favorable to the nonmoving party." Cent. Platte, 643 F.3d at 1146. Under Missouri law, claims for breach of contract, conversion, and declaratory judgment are subject to a five-year statute of limitations. Mo. Rev. Stat. § 516.120. The statute of limitations begins to run "when the damage resulting [from the wrong] is sustained and is capable of ascertainment[.]" Mo. Rev. Stat. § 516.100. This test is an objective one, providing that an injury is capable of ascertainment when the "evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006) (en banc) (quoting Bus. Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. 1999) (en banc)).

State Farm contends that the statute of limitations began to run long before Vogt consulted an actuarial expert and an attorney because he was well aware of the rising COI fees, as evidenced by annual statements State Farm sent to Vogt, and his knowledge of rising COI fees put him on notice of potentially actionable overcharges. This contention is without merit. Although a reasonably prudent person might have had some suspicions about the rising COI fees, this alone would be insufficient to put such a person on notice and trigger the running of the statute of limitations. See Mahanna v. U.S. Bank Nat.'l Ass'n, 747 F.3d 998, 1004 (8th Cir. 2014) ("Notice of a need to investigate triggers claim accrual but not every potential source of suspicion or insecurity gives rise to a duty to investigate.") (applying Missouri law). And as the enumerated factors in the COI provision are mortality factors, it could have reasonably been assumed that the rising COI fees were related to Vogt's increasing age and less favorable mortality outlook, rather than State Farm's inclusion of additional factors in the COI fees. Although, with the help of an attorney and an

actuarial expert, Vogt was ultimately able to determine that the COI fees included non-enumerated factors, there is no evidence in the record that would have "place[d] a reasonably prudent person on notice of a potentially actionable injury" simply based on the rising COI fees and annual statements. Powel, 197 S.W.3d at 582 (quoting Bus. Men's Assurance, 984 S.W.2d at 507). The district court did not err in granting summary judgment to Vogt on State Farm's affirmative defense of limitations.

IV.

State Farm next asserts that the district court erred in certifying this suit as a class action, arguing that (1) numerous members of the class did not have standing due to a lack of damages caused by the COI overcharges; (2) intra-class conflicts existed; and (3) the district court impermissibly certified a fail-safe class. "We accord the district court broad discretion to decide whether certification is appropriate, and we will reverse only for abuse that of discretion." Day v. Celadon Trucking Servs., Inc., 827 F.3d 817, 830 (8th Cir. 2016) (internal quotation marks omitted). "Moreover, a defendant bears a more onerous burden in challenging certification where . . . the initial certification decision was carefully considered and made after certification-related discovery." Id. at 832.

A.

As a threshold matter, Vogt argues that this Court lacks jurisdiction to review the class certification orders because State Farm did not specifically identify these orders in the Notice of Appeal, instead stating only that it was seeking to appeal "all previous rulings and orders that led up to and served as a predicate for that final judgment." "When determining whether an appeal from a particular district court action is properly taken, we construe the notice of appeal liberally and permit review where the intent of the appeal is obvious and the adverse party incurs no prejudice." Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002).

"Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment." Greer v. St. Louis Reg'l Med. Ctr., 258 F.3d 843, 846 (8th Cir. 2001). Vogt argues that the class certification orders did not serve as a predicate to the final judgment on the merits. We disagree. "[T]he class determination involved consideration of factors intertwined with the merits of the action," which we find sufficient to bring the district court's orders within those appealed by State Farm as part of the rulings and orders that "served as a predicate for final judgment. United States v. Bilsky, 664 F.2d 613, 616 (6th Cir. 1981).

B.

State Farm asserts that class certification was inappropriate because the class included members who did not suffer damages and thus do not have standing. See Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010) (explaining that "a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves"). State Farm's argument that some class members lack standing is premised on the assertion that some class members received a credit from State Farm during the period in which the alleged COI overcharges occurred and that this credit created a set-off that left the class members without any damages. In other words, even if the class members were improperly charged excessive COI fees, the credits they received from State Farm more than offset any amount of COI overcharges and left them with no net damages. Without any damages, State Farm argues, these class members have not suffered an injury and therefore do not have standing.

We find State Farm's argument unpersuasive, particularly in light of Stuart v. State Farm Fire and Casualty Co., 910 F.3d 371 (8th Cir. 2018), where we rejected a similar argument in a case also involving State Farm. In Stuart, we affirmed the district court's ruling certifying a class of State Farm homeowners' insurance policyholders who alleged State Farm improperly withheld certain amounts when

making payments under the policy.  Id. at 373.  State Farm argued that the class certification was improper because some class members could not demonstrate an injury because they had ultimately recouped the withheld payments.  We rejected this argument, explaining that

> [a]lthough couched as disputes about standing, State Farm's arguments really go to the merits of plaintiffs' claims.  Under plaintiffs' theory, all individuals who received an improperly-depreciated . . . payment suffered a legal injury—breach of contract—regardless of whether the . . . payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property. [A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged.

Id. at 377 (last alteration in original) (internal quotation marks omitted).  State Farm's arguments here present precisely the same scenario: they challenge the merits of some class members' claims, but couch the argument as one challenging those class members' standing.  For the same reasons we rejected this argument in Stuart, we also reject it here.  This is consistent with the general understanding that a failure on the merits does not affect a class member's individual standing.  1 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedures, Rules and Commentary, Rule 23 (2020) ("[If] it turns out that some members of the class are not entitled to relief, that represents a failure on the merits, not the lack of a justiciable claim.").

Further, as Stuart noted, "[w]hether some plaintiffs are unable to prove damages because they eventually recouped the withheld . . . [payments] is a merits question, and the district court has the power to amend the class definition at any time before judgment."  910 F.3d at 377.  This is precisely the course the district court took, amending the class definition following the jury trial to exclude those class members who suffered no damages.  R. Doc. 404, at 2.  The district court did not abuse its discretion in granting class certification.

C.

State Farm next asserts that intra-class conflicts should have precluded class certification. Specifically, State Farm argues that conflicts exist between current and former policyholders and between those who have held policies for longer durations and those who have held policies for shorter durations. Federal Rule of Civil Procedure 23(a) requires that, for a class action to be certified, the class members share typicality and adequacy of representation. See also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997). "But perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. . . . [T]o forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012). State Farm asserts that the purported intra-class conflicts run afoul of these dictates. We disagree.

State Farm argues that a conflict exists between current and former policyholders, asserting that, if State Farm employed the COI rates that Vogt's expert presented in his damages model, class members would be charged more, not less, and current policyholders would be subject to higher charges, in conflict with former policyholders, who, by definition, would not be subject to increased charges. This purported conflict is entirely speculative and is insufficient to render class certification inappropriate because it relies on nothing more than conjecture about how this lawsuit will affect State Farm's future dealings with current policyholders. See Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010) ("[A] conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical, and in this case, the conflict rests on the uncertain prediction that this lawsuit will cause premiums to increase enough to adversely affect some members of the class." (internal quotation marks and citation omitted)). What will happen with

current State Farm policyholders in the future rests on "uncertain predictions" that cannot serve as a basis to defeat class certification.

As to the purported conflict between policyholders of different durations, State Farm argues that class members who held policies for a longer duration were disadvantaged because Vogt's damages model attributed smaller mortality charges to those who held policies for shorter durations. State Farm argues that the policyholders who held the policy for a longer duration actually benefitted from the COI rates, which pooled all policyholders, regardless of the duration they held the policy. First, with respect to the purported conflict based on State Farm's pooling of mortality rates, as the district court noted in its order denying State Farm's motion to decertify the class, "State Farm's argument fails because the jury found that it did not pool its mortality rates." R. Doc. 402, at 6. Although time and again throughout this appeal State Farm reaffirms its reluctance to accept the jury's finding on this point, the fact remains that the jury concluded State Farm did not pool its mortality rates and any argument premised on pooling must fail. Second, even if there are slightly divergent theories that maximize damages for certain members of the class, "this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability." DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 79 (E.D. Va. 2006); see also 1 Newberg on Class Actions § 3:62 (5th ed. 2019) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class. Courts have thus rejected challenges to the class representatives' adequacy that were based . . . on different class members desiring different methods of calculating damages[.]").

Because there are no class conflicts "so substantial as to overbalance the common interests of the class members as a whole," the district court did not err in certifying the class. Matamoros, 699 F.3d at 138.

D.

State Farm next argues that the class conflicts demonstrate that the district court impermissibly created a fail-safe class. A fail-safe class is one that "would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." Orduno v. Pietrzak, 932 F.3d 710, 716 (8th Cir. 2019) (internal quotation marks omitted). State Farm argues that the district court's exclusion of 487 class members after the jury concluded they failed to prove damages demonstrates that the district court created a fail-safe class. Despite State Farm's argument and requests from amici briefs, we need not decide whether the creation of a fail-safe class is permissible because, quite simply, none is present here. State Farm's argument that the district court excluded 487 class members only after they failed to prove damages is an inaccurate characterization of the record. The district court excluded these class members prior to trial and none of their claims were submitted to the jury. The post-trial statement of the district court in its order altering or amending the judgment served as nothing but clarification on this point.

We are satisfied that the district court defined the class in such a manner that it excluded those individuals who did not share the claim that State Farm's conduct deducted amounts for COI fees that included non-mortality factors, but included and bound all those who did share that claim, even if they ultimately were unsuccessful on that claim. Because all members of the class were bound by the judgment, regardless of whether they succeeded on their individual claims, the district court did not create a fail-safe class.

Based on the foregoing, we conclude that the district court did not abuse its discretion in certifying the class or in denying State Farm's motion to decertify the class.

-15-

V.

State Farm also argues that the district court's denial of State Farm's post-verdict motion for judgment as a matter of law was erroneous because Vogt's damages models were insufficient to sustain the jury's damages award. "We review *de novo* a district court's denial of a post-verdict motion for judgment as a matter of law, viewing the evidence in the light most favorable to the verdict. Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., 646 F.3d 526, 533 (8th Cir. 2011) (citation omitted). State Farm asserts Vogt's evidence of damages was impermissibly speculative and unreliable in that (1) it did not differentiate between policyholders who used tobacco products and those who did not; (2) it lacked evidence demonstrating that State Farm did not pool mortality rates; (3) it failed to account for several months in which the COI fee State Farm charged was less than Vogt's proposed COI rate that considered only enumerated mortality factors; and (4) it improperly included policyholders who received all the benefits to which they were entitled.

Vogt argues that State Farm waived this challenge by failing to raise any objections to Vogt's expert damages models prior to trial through a Daubert[1] motion or through objections at trial. We agree that because State Farm failed to file a Daubert motion or object at trial, it has waived any argument regarding the admissibility of the expert damages models. See, e.g., Marbled Murrelet v. Babbitt, 83 F.3d 1060, 1066 (9th Cir. 1996) ("Although we recognize that evidence which is unreliable is necessarily insufficient, the appropriate time to raise Daubert challenges is at trial. By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal.").

---

[1]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

However, we will consider State Farm's argument to the extent it challenges the sufficiency of the evidence.

Damages for breach of contract must be shown with reasonable certainty, and the plaintiff bears the burden of providing a rational estimate of the damages "without resorting to speculation, but the specific amount of damages is committed to the discretion of the factfinder." Randy Kinder Excavating, Inc. v. J.A. Manning Constr. Co., Inc., 899 F.3d 511, 520 (8th Cir. 2018) (internal quotation marks omitted). (applying Missouri law). In a sufficiency of the evidence challenge, "[i]t is well settled that we will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).

As to State Farm's complaint that the damages models were insufficient because they did not differentiate between tobacco and non-tobacco users, there was no need for the damages models to take this mortality factor into account as this was not a mortality factor listed in the policy. If State Farm's stated mortality factors did not make any differentiation between those who used tobacco products and those who did not, there is no reason to believe that COI fees would be different as between tobacco and non-tobacco users. As to State Farm's argument that the damages models were insufficient because they operated under the assumption that State Farm did not pool mortality rates in spite of State Farm's presentation of undisputed evidence that they did pool mortality factors, this is nothing more than an attempt to unwind the factual findings of the jury, which concluded that State Farm did not pool its policies when calculating the COI rates. Because the jury concluded State Farm did not pool its policies, the damages models that represented this fact were sufficient to support the jury award.

State Farm further argues that the damages models were insufficient to support the verdict because they failed to account for several months in which the COI fee State Farm charged was actually less than a COI fee that considered only the enumerated mortality factors. We find this argument unpersuasive. At trial, State Farm presented an offset defense, arguing that State Farm was entitled to an offset for amounts from months where it charged a COI fee that was less than what a COI fee based on mortality factors would have included and Vogt presented a damages model that accounted for State Farm's claimed amount of offsets. As the damages model the jury ultimately selected included State Farm's offset amounts, we are unpersuaded by State Farm's argument. Finally, with respect to State Farm's argument that the damages models were insufficient because they improperly included policyholders who received all the benefits to which they were entitled, we are similarly unpersuaded. State Farm specifically argues that, upon death and payment of death benefits, all benefits owing on account of a policyholder who selected a death benefit option would be paid: the face amount of the insurance, not any amount of the policy's account value. Thus, State Farm asserts that the policyholder's beneficiaries no longer have an interest in the account value. Instead, the policyholders' beneficiaries are entitled to only the death benefits under the term of the policy. Without an interest in the account value, State Farm argues, there can be no claim that a deceased policyholder's account value was wrongfully depleted by COI overcharges. However, we see no reason to limit damages merely because death benefits have been paid for a policyholder; that policyholder still suffered a depleted account value during his lifetime due to State Farm's overcharges of COI fees. Vogt's damages models, which measure the lost account value for all policyholders during the period in which they held the policies, provide the most reasonable basis for measuring the harm that was incurred during the life of the policyholders.

State Farm's challenges to the sufficiency of the damages models, as a whole, miscast the evidence presented to the jury and the verdict reached by the jury. Mindful that we may reverse only where no reasonable juror could have reached a

verdict in favor of Vogt, we reject State Farm's argument that the damages models were insufficient to support the jury award. The district court did not err in denying State Farm's motion for judgment as a matter of law based on the alleged insufficiency of the damages models as evidence of damages suffered by class members.

VI.

State Farm also takes aim at various evidentiary rulings of the district court, asserting that the district court (1) incorrectly allowed Vogt to introduce late-disclosed expert materials at trial; (2) erroneously excluded any evidence related to the maximum rates State Farm was permitted to charge under the terms of the policy; and (3) erroneously limited the testimony of State Farm's expert. State Farm further argues the cumulative effect of these rulings amounts to reversible error. State Farm raised these evidentiary issues in its motion for new trial, the denial of which we review for "a 'clear' abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013). Similarly, we review a district court's evidentiary rulings for an abuse of discretion and will reverse only if the evidentiary ruling "was a clear and prejudicial abuse of discretion." United States v. Mahasin, 362 F.3d 1071, 1084 (8th Cir. 2004). This standard requires "a showing that those rulings had a substantial influence on the jury's verdict." McPheeters v. Black & Veatch Corp., 427 F.3d 1095, 1101 (8th Cir. 2005).

A.

State Farm first argues that the district court erroneously allowed Vogt to present three expert damages models at trial that were not timely disclosed. Vogt originally provided his expert materials to State Farm on January 30, 2018, and provided a supplement on February 5, 2018. State Farm does not dispute that these

-19-

were properly and timely disclosed expert materials. But on May 16, 2018, after the February 15, 2018 deadline for plaintiff's rebuttal expert reports, Vogt provided State Farm with three damages models that had not been previously disclosed. State Farm asserts that these amount to new, untimely disclosed expert opinions that the district court erroneously allowed Vogt to present to the jury. Further, State Farm asserts that there is clear evidence that this prejudiced State Farm because the jury's verdict rejected the only damages model that had been timely disclosed, instead adopting a damages model from the late-disclosed materials. Under Federal Rule of Civil Procedure 26(a), the "failure to disclose [expert materials] in a timely manner is equivalent to a failure to disclose." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (quoting Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998)). Where a party fails to make a timely disclosure, Federal Rule of Civil Procedure 37(c)(1) provides the district court with the authority to exclude the late-disclosed materials or to fashion a lesser penalty than total exclusion. See also Petrone v. Werner Enters, Inc., 940 F.3d 425, 435 (8th Cir. 2019) ("Rule 37(c)(1) addresses what to do if a party fails to disclose information as required by Rule 26(a) and attempts to use that information on a motion, at a hearing, or at a trial." (emphasis omitted)).

Before considering whether the damages models violated Rule 26 and were thus subject to the sanctions of Rule 37, we must first consider whether the damages models were actually untimely disclosed expert materials or if they were merely summaries of voluminous data that were admissible under Federal Rule of Evidence 1006. Rule 1006 allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," provided that the party seeking to introduce the summary "make[s] the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." "Summary evidence is properly admitted when (1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the

witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary." United States v. Green, 428 F.3d 1131, 1134 (8th Cir. 2005) (internal quotation marks omitted). Summary evidence also may "include assumptions and conclusions, but said assumptions and conclusions must be based upon evidence in the record." Id. (quoting United States v. Wainwright, 351 F.3d 816, 821 (8th Cir. 2003)).

In light of the fact that this case involves complicated and voluminous data about the COI fees charged to numerous policyholders over a significant period of time, the damages models are best characterized as summaries that Vogt introduced to better aid the jury in understanding the evidence at trial. As the district court noted, the additional damages models utilized the same methodology and calculations as the previously disclosed expert materials, differing only insofar as they altered assumptions to apply the theories that State Farm's expert presented. The differences between the originally disclosed damages models and the three later-produced damages models are no more than different "assumptions and conclusions" that are "based upon evidence in the record." Id. (quoting Wainwright, 351 F.3d at 821). And the district court did not allow Vogt to introduce these models at trial without providing any recourse to State Farm. The district court allowed State Farm to conduct a telephonic deposition of Vogt's expert prior to trial and gave State Farm the opportunity to both submit its own exhibit in response and have its expert comment on the calculations in the new models.

For the foregoing reasons, we conclude that the damages models were admissible as summaries of voluminous data, and the district court did not abuse its discretion by allowing Vogt to introduce these models to the jury. Because we conclude that these summaries were properly admissible under Rule 1006, we find Rule 26 inapplicable. The district court thus did not err in denying the motion for new trial on this basis.

B.

State Farm also asserts that the district court erroneously precluded State Farm from presenting evidence regarding the maximum COI rates under the policy and that State Farm never exceeded this rate, which State Farm argues was relevant to whether any class member sustained any damages from the COI fees. We see no error in the district court's exclusion of this evidence because it is irrelevant to the determination of whether class members were damaged by State Farm's breach of contract in using non-enumerated factors to assess COI fees.

Relevant evidence "has any tendency to make a fact more or less probable than it would be without the evidence" and involves a "fact [that] is of consequence in determining the action." Fed. R. Evid. 401. Evidence of the maximum COI rates that State Farm was allowed to charge under the policy fails under both guideposts. The jury was tasked only with resolving the issue of damages because the district court determined, via summary judgment, that Vogt had sufficiently demonstrated that State Farm had breached the contract with its policyholders by collecting COI fees based on non-enumerated factors. Whether State Farm charged COI fees below the maximum rate stated in the policy has nothing to do with the question of whether class members were damaged by State Farm's collection of COI fees based on impermissible factors under the policy. It thus does not make it more or less likely that class members sustained damages from the overcharges, and the maximum COI rates under the policy is not of consequence in determining damages sustained through COI overcharges. Further, even if this proof had some arguable relevance, the district court acted within its discretion in excluding this evidence because it would serve no purpose other than to confuse or mislead the jury into revisiting issues of liability that had already conclusively been determined. See Fed. R. Evid. 403; Am. Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 467 (8th Cir. 2013) (finding no error where district court excluded evidence that was irrelevant and would tend to confuse the jury). The district court thus committed no error in excluding evidence

-22-

related to State Farm's maximum allowable COI rates charged under the policy and in denying the motion for new trial on this basis.

## C.

State Farm next argues that the district court erroneously limited the testimony of its expert, preventing the expert from providing testimony about an actuarial memorandum from State Farm's New Jersey operations that State Farm argues was relevant to whether State Farm pooled its mortality rates. The district court prohibited State Farm from questioning its expert on this memorandum because it concluded that the expert's opinions in his report did not discuss the memorandum. However, when Vogt's counsel questioned the expert on cross-examination about the memorandum, the district court allowed it. State Farm argues that this was in error because it gave the jury the false impression that it was State Farm, not Vogt, that did not want any testimony about the actuarial memorandum introduced into evidence. State Farm asserts that preventing it from eliciting this testimony on direct examination was prejudicial to State Farm's case as a central question for the jury to consider in assessing the question of damages was whether State Farm pooled its mortality rates.

First, the district court was within its discretion to exclude this testimony because State Farm's expert did not offer any opinion on the New Jersey memorandum in his expert report. See Fed. R. Civ. P. 26(a)(2)(B)(i) (explaining that expert report is required to include "a complete statement of all opinions the witness will express and the basis and reasons for them"); Fed R. Civ. P. 37(c)(1) (providing for exclusion of untimely disclosed expert information). Second, even if the district court's ruling were erroneous, State Farm suffered no prejudice from either the district court's original decision to exclude the testimony or the district court's allowance of questions to this effect on cross examination because, once Vogt's counsel opened the door in cross examination of State Farm's expert, State Farm

-23-

could have questioned the expert about the memorandum on re-direct examination. State Farm could have both used the memorandum for probative purposes and cured any potential false impression about State Farm's desire to use the information. That State Farm did not avail itself of this opportunity does not create prejudice requiring reversal. See McPheeters, 427 F.3d at 1101 (providing standard for finding prejudice for erroneous evidentiary ruling). The district court did not err in limiting the expert's testimony, and in denying the motion for new trial on this basis.

D.

State Farm finally argues that, even if the alleged errors do not individually warrant reversal, the cumulative effect of the rulings does. But "[w]e will not reverse based upon the cumulative effect of errors unless there is substantial prejudice to the defendant, and we have declined to apply the doctrine when the evidentiary rulings are within the trial court's discretion." McPheeters, 427 F.3d at 1106 (quoting United States v. Gladfelter, 168 F.3d 1078, 1083 (8th Cir. 1999)). As we have found that all of the evidentiary rulings State Farm challenges were within the district court's discretion, we find no cumulative error requiring reversal.

VII.

State Farm next challenges the judgment in favor of Vogt on the conversion claim, arguing both that the conversion claim fails as a matter of law and that the district court erroneously instructed the jury. State Farm renews arguments it raised in its motion for new trial, which the district court denied. Again, we review the denial of a motion for new trial for clear abuse of discretion. Hallmark Cards, 703 F.3d at 462.

Vogt asserted a conversion claim under Missouri law, and we review the district court's interpretation of state law de novo. St. Paul Fire & Marine Ins. Co.

v. Schrum, 149 F.3d 878, 880 (8th Cir. 1998). State Farm presents two arguments as to why Vogt's conversion claim fails under Missouri law, each equally unavailing. First, State Farm argues that money cannot be the subject of a conversion claim and therefore the money involved in COI overcharges cannot have been converted. But State Farm ignores that Missouri law recognizes an exception to the general rule that money cannot be converted: "[C]onversion does not ordinarily lie for money represented by a general debt. However, the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion." Dillard v. Payne, 615 S.W.2d 53, 55 (Mo. 1981) (citations omitted). Here, policyholders submitted payments to State Farm with the intention that State Farm add those amounts to their account values. They did not authorize State Farm to deduct amounts from their accounts for COI fees based on factors other than those listed in the policy. Thus, State Farm's unauthorized deductions fall within the exception recognized under Missouri law.

Second, State Farm asserts that the conversion claim is barred by the economic loss doctrine, which Missouri law recognizes "bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010) (internal quotation marks omitted) (applying Missouri law). However, State Farm again ignores Missouri law that expressly limits this doctrine to warranty and negligence or strict liability claims. See, e.g., Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 130-31 (Mo. 2010) (en banc) ("Under Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC."); Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co., 703 S.W.2d 901, 903 (Mo. banc 1986) (explaining that the economic loss doctrine precludes "recovery on a theory of strict liability in tort, as a matter of policy, where the only damage is to the product sold"). As the district court correctly noted in rejecting this argument, "Missouri courts have never extended the economic

loss doctrine beyond the doctrine's traditional moorings as policing the boundaries between warranty and negligence[.]" R. Doc. 71, at 6. The district court thus did not err in its interpretation of Missouri law and did not abuse its discretion in denying the motion for new trial on this basis.

As to State Farm's claim that the jury instructions erroneously stated the elements of conversion, "[w]e review a district court's formulation of jury instructions for an abuse of discretion and its interpretation of law *de novo*." United States v. Spotted Horse, 916 F.3d 686, 691 (8th Cir.) (quoting United States v. Farah, 899 F.3d 608, 614 (8ht Cir. 2018)), cert. denied, 140 S. Ct. 196 (2019). "We afford the district court broad discretion in choosing the form and language of the instructions, and our review is limited to a determination of whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and accurately submitted the issues to the jury." Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006).

The district court gave the following instruction to the jury:

Your verdict must be for Plaintiffs on their claim for conversion if you believe:

*First,* each Plaintiff was the owner of the Account Value.

*Second*, State Farm took non-mortality factors into account when making deductions from the Account Value for the monthly Cost of Insurance rates.

*Third*, one or more of the Plaintiffs was thereby damaged.

*Fourth*, as a result, State Farm deprived any Plaintiff who was damaged of possession of the portion of the funds in the Account Value attributable to non-mortality factors.

It has previously been determined that the first, second, and fourth elements are established as a matter of law. You must treat those elements as having been proved. Therefore, your verdict must be for Plaintiffs on their claim for conversion if you believe that one or more Plaintiffs suffered damages as a result of State Farm's use of non-mortality factors to set the monthly Cost of Insurance rates that Plaintiffs paid.

R. Doc. 356, at 20. State Farm argues that this instruction was an erroneous statement of the law because it absolved class members of the obligation to show a specific corpus from which funds were diverted, and instead allowed Vogt to prevail by proving only damages, which is not an element of conversion. See IOS Capital, LLC v. Allied Home Mortg. Capital Corp., 150 S.W.3d 148, 153 (Mo. Ct. App. 2004) ("The elements of a cause of action for conversion are: (1) the plaintiff was the owner of the property or entitled to possession of the property, (2) the defendant took possession of the property with the intent to exercise some control over it, and (3) the defendant thereby deprived the plaintiff of the right to possession of the property."). We are unpersuaded by this argument. The district court's inclusion of the word "damages" in the instruction did not replace the requirement of a specific, identifiable corpus with a mere showing of damages. Instead, the district court's inclusion of the phrase "damages" served to convey that a plaintiff must show the specific funds that were converted from his account in order to prevail on this claim. And, in granting in part Vogt's motion for summary judgment on the breach of contract claim, the district court determined that, as a matter of law, each plaintiff was entitled to possession of money deducted from the account value based on non-morality factors; to the extent State Farm appropriated these funds, it was wrongful; and State Farm deprived each plaintiff of the right to possess the full account value. Thus, the district court's formulation of the conversion instruction served to isolate the remaining questions for the jury: whether State Farm had deducted amounts for COI fees that were based on non-enumerated factors, and if so, in what amount. This instruction is consistent with the elements of conversion under Missouri law. Because the

district court properly instructed the jury on the conversion claim, it did not err in denying State Farm's motion for new trial.

## VIII.

On cross-appeal, Vogt asserts that the district court erred by denying prejudgment interest, arguing that a Missouri statute mandates prejudgment interest on liquidated claims for breach of contract, which is the type of claim the class pursued, and that the same statute applies to conversion claims. Vogt contends that the district court erroneously determined that the policy precluded the award of prejudgment interest at the statutory rate, and, at the very least, should have awarded prejudgment interest by utilizing the 4% rate included in the policy. "Whether the district court had authority to grant prejudgment interest is a question of state law which we review de novo." Transit Cas. Co. v. Selective Ins. Co. of Se., 137 F.3d 540, 546 (8th Cir. 1998). "In a diversity case, the question of prejudgment interest is a substantive one, controlled by state law[,]" here, Missouri law. Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003).

Under Mo. Rev. Stat. § 408.020,

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

"Where an agreement is reached by the parties regarding the interest rate, even if the agreement is that no interest will be paid or established the interest rate to be zero percent, it will be enforced." G&G Mech. Constructors, Inc. v. Jeff City Indus., Inc.,

-28-

549 S.W.3d 492, 496 (Mo. Ct. App. 2018). Section 408.020 also applies to conversion claims. Stromberg v. Moore, 170 S.W.3d 26, 32 (Mo. Ct. App. 2005).

The district court determined that the inclusion of an interest rate of 4% in the policy precluded an award of prejudgment interest at the statutory rate because the 4% represented the "other rate . . . agreed upon" in Mo. Rev. Stat. § 408.020. Specifically, the policy contains an "Interest" provision, which states:

> An interest rate of at least 4% a year will be applied to the account value. The rate applied to the amount of account value up to the amount of any loan may differ from the rate applied to the account value in excess of the amount of any loan. We will determine these rates at least once a year.

R. Doc. 167-2, at 11. Although this provision does not speak directly to prejudgment interest, we are satisfied that the parties agreed, by the terms of the contract, that the interest rate to be applied to all policyholder funds held by State Farm was to be 4%. See Manfield v. Auditorium Bar & Grill, Inc., 965 S.W.2d 262, 270 (Mo. Ct. App. 1998) ("If the legislature had intended for the statutory interest rate to apply where, as here, there is an agreement as to the rate of interest to be charged, but no separate and specific agreement as to whether the same rate is to be charged after maturity or default, it could have simply said so. It did not."). In the face of this express agreement, a higher rate of interest is precluded.

Although we conclude the district court correctly denied Vogt's request for prejudgment interest at the statutory rate, Vogt is entitled to prejudgment interest at the 4% rate contained in the contract. State Farm asserts that Vogt has already been awarded this amount because it was included in the damages model the jury ultimately selected at trial. Vogt counters that while the damages model included the contract rate on each class member's account value through the date each policy was surrendered or terminated, it does not include any prejudgment interest amount for

-29-

the time following surrender or termination. We agree with Vogt that the policy holders are entitled to prejudgment interest at the contractual rate of 4% up until the date of judgment, not merely up until the date of termination or surrender. We further agree with Vogt that the damages model does not include the 4% interest rate beyond the date of termination or surrender of a given policy. Because the damages model does not include prejudgment interest for the entire time up until judgment, the district court erroneously denied Vogt's motion for an award of prejudgment interest. Accordingly, we reverse and remand to the district court for reconsideration of the motion, consistent with this analysis.

## IX.

For the foregoing reasons, we affirm in part and reverse and remand in part. Vogt's motion to file a supplemental appendix is denied.

_____