# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3784

_____

James Stuart, individually and on behalf of all others similarly situated; Careda L. Hood

*Plaintiffs - Appellees*

v.

State Farm Fire and Casualty Company

*Defendant - Appellant*

------------------------------

American Insurance Association; Property Casualty Insurers Association of America

*Amici on Behalf of Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: September 26, 2018
Filed: December 6, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

State Farm Fire and Casualty Company appeals the district court's[1] ruling certifying a class of Arkansas homeowners who allege that State Farm improperly withheld amounts for labor depreciation when making payments under their insurance policies. We held this case in abeyance pending the outcome of In re State Farm Fire & Casualty Co. (LaBrier), 872 F.3d 567 (8th Cir. 2017), reh'g denied (Oct. 31, 2017), and now affirm the district court's order as modified.

I

State Farm entered into replacement-cost homeowner's insurance contracts with plaintiffs. Under the form policy used in the contracts, State Farm's obligation to pay for property damage would be satisfied in two stages. First, prior to the insured making any repairs, State Farm agreed to pay the "actual cash value at the time of the loss of the damaged part of the property," up to the policy's liability limit, "not to exceed the cost to repair or replace the damaged part of the property." "Actual cash value" or "ACV" is calculated under the policy by estimating "the amount it would cost to repair or replace damaged property" and subtracting depreciation. This process would generally involve sending an adjuster to inspect the damage and prepare an estimate using software called Xactimate. Xactimate estimates the price of each task necessary for repair, including the cost of materials and labor, and then applies depreciation using an established formula. During the class period, State Farm's Xactimate software depreciated both materials and labor when calculating ACV.

State Farm would generally use Xactimate's ACV calculation to make a payment to the insured, minus deductible. The policy imposed no obligation on the insured to use this ACV payment to actually make repairs to the property. If the

_____

[1] The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

insured failed to make the repairs, or made the repairs for less than the amount of the ACV payment, the insured was not obligated to remit the overpayment to State Farm. If the insured made repairs and incurred costs *greater* than the ACV payment, the insured could seek further payment from State Farm. In this second stage, the insured could seek repayment of actual repair costs (the "replacement cost value" or "RCV"), based on documentation showing the repairs made and the costs incurred.

In 2013, the Arkansas Supreme Court held that "the costs of labor may not be depreciated when determining the actual cash value of a covered loss under an indemnity insurance policy that does not define the term 'actual cash value.'" Adams v. Cameron Mut. Ins. Co., 430 S.W.3d 675, 679 (Ark. 2013), superseded by statute, Ark. Code Ann. § 23-88-106(a)(2) (2017) (expressly permitting insurance policies to account for depreciation of labor in calculating ACV after August 1, 2017). Plaintiffs filed this class action on behalf of holders of State Farm insurance policies who received ACV payments "arising from events that occurred between November 21, 2008 and December 6, 2013, where the cost of labor was depreciated." The district court granted plaintiffs' motion for class certification, and we granted State Farm's petition to appeal. See Fed. R. Civ. P. 23(f).

II

Federal Rule of Civil Procedure 23 governs class certification. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). The party must show that the proposed class satisfies Rule 23(a)'s threshold requirements of numerosity, commonality, typicality, and adequacy, and that the class fits within "one of the three subsections of Rule 23(b)." Webb v. Exxon Mobil Corp., 856 F.3d 1150, 1155 (8th Cir. 2017) (quoting Ebert v. Gen. Mills, Inc., 823 F.3d 472, 477 (8th Cir. 2016)); see Fed. R. Civ. P. 23. Here, the district court certified the class under Rule

23(b)(3). State Farm does not contest that plaintiffs have demonstrated compliance with Rule 23(a), so our inquiry focuses on Rule 23(b)(3).

Before certifying a class under Rule 23(b)(3), a district court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). Certification is appropriate if "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:49, at 195–96 (5th ed. 2012)). A class may be certified based on common issues "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005)).

Our review of a district court's decision to certify a class is limited. A district court has "broad discretion" to determine whether certification is appropriate. Ebert, 823 F.3d at 477 (quoting Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015)). The district court's rulings on questions of law are reviewed de novo and its application of the law is reviewed for an abuse of discretion. In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 618 (8th Cir. 2011). The district court's factual findings are reversible only if clearly erroneous. Ebert, 823 F.3d at 477.

III

Plaintiffs argue that their claims share a common legal question: whether State Farm breached their contracts by depreciating labor from their ACV payments. In order to state a cause of action for breach of contract under Arkansas law, plaintiffs need only assert the existence of valid and enforceable contracts with State Farm, an obligation of State Farm thereunder, a violation of that obligation, and resulting damages. Farris v. Conger, 512 S.W.3d 631, 634 (Ark. 2017). The form policies in plaintiffs' insurance contracts obligated State Farm to pay plaintiffs the ACV of their loss, and specified that ACV would be calculated as "the amount it would cost to repair or replace damaged property, less depreciation." In Adams, the Arkansas Supreme Court examined a similar contract that did not define ACV. The court concluded the undefined term was ambiguous and applied a definition that is essentially identical to the definition of ACV explicitly included in plaintiffs' contracts: "[r]eplacement cost minus normal depreciation." 430 S.W.3d at 678 (alteration in original) (quoting *Actual Cash Value*, Black's Law Dictionary (9th ed. 2009)). That definition, the Adams court concluded, does not permit the insurer to depreciate labor when calculating ACV. Id. at 679. While materials may suffer depreciation over time due to wear and tear, the court reasoned, labor does not: "to depreciate the cost of labor would leave [the insured] with a significant out-of-pocket loss, a result that is inconsistent with the principle of indemnity." Id. (alteration in original) (quoting Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1023 (Okla. 2002) (Boudreau, J., dissenting)).

It was not an abuse of discretion for the district court to conclude that plaintiffs' claims share a common, predominating question of law. Plaintiffs' theory is that State Farm violated its contractual obligations by depreciating both materials and labor when calculating ACV, thereby reducing the size of their ACV payments. The viability of this theory is a common question well suited to classwide resolution. The district court previously concluded that these allegations stated a claim for breach

of contract under <u>Adams</u>, and that decision is not before us on this appeal. <u>See</u> <u>Dennington v. State Farm Fire & Cas. Co.</u>, No. 4:14-CV-4001, 2016 WL 1021003, at \*6 (W.D. Ark. Mar. 14, 2016).

Relying heavily on our recent decision in <u>LaBrier</u>, State Farm asserts that plaintiffs cannot demonstrate predominance and superiority because individual issues of liability and damages exist for each plaintiff that cannot be established with common evidence. In <u>LaBrier</u>, we analyzed the claims of a group of Missouri homeowners who argued that State Farm breached its contracts by deducting labor depreciation from their ACV payments. Missouri law, we noted, defines ACV as "the difference between the reasonable value of the property immediately before and immediately after the loss." 872 F.3d at 573 (quoting <u>Porter v. Shelter Mut. Ins. Co.</u>, 242 S.W.3d 385, 390 (Mo. Ct. App. 2007)). Different methods may be used to estimate the fair market value of a property before and after a destructive event, and the policies at issue in <u>LaBrier</u> did not specify which should be used. State Farm opted to estimate the cost of fully replacing or repairing the damaged property and then subtract depreciation. That is the same method that State Farm used here, and it is "an eminently practical and reasonable method for making an initial *estimate* of actual cash value at the time of loss." <u>Id.</u> at 576.

We concluded that the plaintiffs in <u>LaBrier</u> could not show predominance because whether State Farm's chosen methodology produced a reasonable estimate of the difference in a property's value before and after a loss was a question for the jury to determine on a case-by-case basis. <u>See id.</u> In other words, because the contracts did not specify how ACV payments would be calculated, whether State Farm was in breach would depend on whether its methodology produced a reasonable estimate of ACV, as defined by Missouri law, in an individual case. Because this question could not be answered on a class basis, certification under Rule 23(b)(3) was inappropriate.

State Farm argues that LaBrier controls the claims at issue here, but there are critical differences between LaBrier and the instant case. Unlike in LaBrier, plaintiffs' contracts specified the method for calculating ACV payments: "the amount it would cost to repair or replace damaged property, less depreciation." Thus, State Farm's obligation here was not merely to arrive at a "reasonable" estimate of the property's value before and after the loss, but to calculate the ACV payment in accordance with the prescribed formula. There is no need for a jury to evaluate conflicting estimates based on different methodologies; the parties agreed on a methodology and the only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified. Arkansas law under Adams differs from Missouri law in that it explicitly prohibited insurers from depreciating the costs of labor when using this formula. 430 S.W.3d at 678–79.

The potential need for individualized damages inquiries is not sufficient to overcome the district court's findings of predominance and superiority. Tyson Foods, 136 S. Ct. at 1045. State Farm argues that insureds who went on to obtain RCV payments cannot show damages because they ultimately received a payment that included no labor depreciation. The district court concluded that this defense could be resolved using common proof, and that conclusion was not an abuse of discretion. State Farm also argued that it may have overestimated some plaintiffs' ACV payments by such a degree that the labor depreciation resulted in no injury. But insureds were under no obligation to use the ACV payment to actually repair or replace the damaged property, so any overestimation by State Farm simply operates as an error in the insured's favor. Regardless, the district court found there was insufficient evidence that this issue would affect a significant portion of the class, and that decision was not clear error.

It was not an abuse of discretion for the district court to conclude that common questions predominate over individualized issues and that adjudicating the claims as

a class is superior to alternatives. The district court properly noted that the class members' claims are generally small and unlikely to be pursued individually. It also noted that concentrating the claims in a single forum is desirable, and that it did not anticipate unreasonable difficulty in managing the class action. We find no clear error in these findings, all of which support certification.

IV

State Farm argues that class certification is inappropriate because certain plaintiffs cannot demonstrate the injury-in-fact element of standing. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (describing the injury-in-fact requirement as one of three elements forming the "irreducible constitutional minimum of standing"). It is well established that a class must be defined "in such a way that anyone within it would have standing." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006)). However, our analysis of standing is "not a review of the merits." Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis, 168 F.3d 1069, 1073 (8th Cir. 1999). The fact that some plaintiffs may be unable to succeed on their claims does not necessarily mean that they lack standing to sue.

State Farm argues that plaintiffs who completed their repairs at or below the cost of the ACV payment, or who ultimately received RCV payments, have suffered no injury and accordingly lack standing. Although couched as disputes about standing, State Farm's arguments really go to the merits of plaintiffs' claims. Under plaintiffs' theory, all individuals who received an improperly-depreciated ACV payment suffered a legal injury—breach of contract—regardless of whether the ACV payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property. "[A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." Kuhns v. Scottrade, Inc., 868 F.3d 711, 716 (8th Cir. 2017) (quoting

<u>Carlsen v. GameStop, Inc.</u>, 833 F.3d 903, 909 (8th Cir. 2016)).  Whether some plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question, and the district court has the power to amend the class definition at any time before judgment.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(C).

Finally, State Farm argues that some plaintiffs' claims are barred by res judicata because they are parties to a class settlement in <u>Chivers v. State Farm Fire & Casualty Co.</u>, No. CV-2010-251-3 (Ark. Cir. Ct.).  In a separate order entered before the class certification decision at issue in this appeal, the district court dismissed the claims of all plaintiffs who were members of the <u>Chivers</u> class.  <u>See</u> <u>Dennington</u>, 2016 WL 1021003, at *4–5.  In its certification order, however, the district court did not expressly exclude from the class definition those covered by the <u>Chivers</u> settlement.  Plaintiffs agree that the class should be amended to reflect the district court's prior ruling.  We therefore modify the district court's certification order to exclude those subject to the <u>Chivers</u> settlement from the class definition.  28 U.S.C. § 2106; <u>see</u> <u>In re Zurn Pex Plumbing</u>, 644 F.3d at 617 (courts may amend class definition to sever barred claims).

The order of the district court is affirmed as modified, and the case is remanded for further proceedings consistent with this opinion.

_____