RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SUSAN HICKS; DON WILLIAMS,

*Plaintiffs-Appellees*,

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,

*Defendant-Appellant*.

┐
│
│
> No. 19-5719
│
│
┘

─────────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 0:14-cv-00053—Henry R. Wilhoit, Jr., District Judge.

Argued: June 16, 2020

Decided and Filed: July 10, 2020

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Jacob L. Kahn, RILEY SAFER HOLMES & CANCILA LLP, Chicago, Illinois, for Appellant. Erik D. Peterson, MEHR, FAIRBANKS, & PETERSON, Lexington, Kentucky, for Appellees. **ON BRIEF:** Jacob L. Kahn, Joseph A. Cancila, Jr., RILEY SAFER HOLMES & CANCILA LLP, Chicago, Illinois, David Klapheke, BOEHL STOPHER & GRAVES LLP, Louisville, Kentucky, for Appellant. Erik D. Peterson, M. Austin Mehr, Philip G. Fairbanks, MEHR, FAIRBANKS, & PETERSON, Lexington, Kentucky, for Appellees. Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut, J. Brandon McWherter, MCWHERTER SCOTT BOBBITT PLC, Franklin, Tennessee, for Amici Curiae.

STRANCH, J., delivered the opinion of the court in which GIBBONS, J., joined. McKEAGUE, J. (pp. 19–24), delivered a separate opinion concurring in the judgment in part and dissenting in part.

—————————————

**OPINION**

—————————————

JANE B. STRANCH, Circuit Judge.  Defendant State Farm Fire and Casualty Company appeals the district court's ruling certifying a class of Kentucky homeowners who allege that State Farm improperly withheld labor depreciation from payments due to them under their insurance policies.  Because the district court did not abuse its discretion in certifying the class, we **AFFIRM** the class certification order and **REMAND** for further proceedings.

## I.  BACKGROUND

State Farm and named Plaintiffs Susan Hicks and Don Williams entered into replacement-cost homeowner insurance contracts.  State Farm's standard-form policy provides a two-step settlement process, obligating the insurer to pay for property damage.  First, before the insured makes any repairs, State Farm must pay the "actual cash value at the time of the loss of the damaged part of the property," up to the policy's liability limit,  "not to exceed the cost to repair or replace the damaged part of the property."  The "actual cash value" (ACV) is calculated under the policy by estimating the amount it will cost to repair or replace damaged property and subtracting depreciation and the deductible.  *Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703, 707–08 (6th Cir. 2018) (noting the parties' agreement that "the policies incorporate the definition provided in Kentucky's ACV regulation, § 9(2)" and interpreting the regulation as defining "ACV using the replacement cost minus depreciation formula").  If a policyholder owned a house with a ten-year-old roof that was destroyed by hail, "it is not feasible" for the insurer "to buy a ten-year-old roof (or ten-year-old roofing materials) to install on an existing building," *id.* at 709; thus, insurers subtract depreciation to arrive at ACV estimates.

During the class period, State Farm determined the ACV first by sending an adjuster to inspect the damage and estimate the reconstruction cost.  *Id.* at 704.  Using Xactimate, software State Farm has exclusively used since 1990, State Farm then input the adjuster's reconstruction cost estimate—the "replacement cost value" or RCV—and depreciated costs for both materials and labor.  *Id.*  Xactimate produced an ACV calculation (RCV minus material and labor cost

depreciation), subtracted the insured's deductible, and then State Farm paid that Xactimate estimate to the insured.

Insureds did not have to spend this ACV payment or make repairs on their property; if they made no repairs or made repairs for less than the ACV payment, they did not have to return any of the ACV payment to State Farm. If an insured made repairs and incurred costs exceeding the ACV payment, however, the individual could seek further payment from State Farm. In this second stage, the insured could seek repayment of replacement cost benefits based on documentation showing the repairs made and the costs incurred.

Fires destroyed Plaintiffs' homes in 2014. *Id.* at 704. State Farm accepted coverage and issued ACV payments to Plaintiffs. Using Xactimate, State Farm estimated Williams's RCV as $206,068.88, including material and labor costs; subtracted Williams's $500 deductible, $40,627.34 for depreciation of materials and labor, and $8,125.54 for "general contractor overhead & profit on recoverable and non-recoverable depreciation"; and issued a $156,316.00 ACV payment. Williams chose not to rebuild his home and instead purchased a new home for $75,000. He did not need to return any of his ACV payment, and he recovered none of the depreciated costs. State Farm used Xactimate to estimate Hicks's RCV as $273,306.97, including costs for materials and labor; subtracted Hicks's $500 deductible, $60,751.32 in depreciation of materials and labor, and $12,150.68 for "general contractor overhead & profit on recoverable and non-recoverable depreciation"; and issued Hicks a $199,904.97 ACV payment. Hicks repaired her home and later recovered the withheld depreciation.

Plaintiffs filed this putative class action, alleging that their ACV payments were miscalculated because State Farm, in violation of Kentucky law, included labor costs in its depreciation deduction. State Farm moved to dismiss Plaintiffs' contract claims, which the district court denied, concluding that State Farm could only depreciate costs for materials, not labor, under Kentucky law.

State Farm filed its first appeal. We affirmed, holding that in an insurance contract that incorporates Kentucky's "replacement cost minus depreciation" formula, the insurer cannot depreciate costs of labor when determining ACV payments. 751 F. App'x at 711. "A layperson

confronted with State Farm's policy," which incorporated Kentucky's ACV formula, "could reasonably interpret the term depreciation to include only the cost of materials" and not the costs of labor. *Id.* at 709. And Kentucky law dictates that courts resolve ambiguity in insurance contracts in favor of the insured. *Id.* Thus, under Kentucky law, it was improper for State Farm to subtract depreciated labor costs from Plaintiffs' ACV payments.

On July 25, 2015, State Farm changed its practice to conform to the district court's decision. It also created a program to send refunds to those who had received ACV payments between March 25, 2015 and July 25, 2015, the gap between the district court's decision on labor depreciation and the date State Farm stopped deducting labor depreciation costs. State Farm manager John MacMillan, who oversaw the refund program, explained that the process involved finding those claimants who had not already been reimbursed for depreciation and unchecking a box in Xactimate so that "the parameters on the estimate would . . . no longer be depreciating" labor costs. (Sealed R. 115-3, MacMillan Dep., PageID 4432, 22:12-23:11) For the 1,854 claimants that State Farm identified as needing refunds during that period, it simply changed the Xactimate parameters for calculating the claimants' ACV payments (by unchecking a box) so that labor depreciation was no longer subtracted from their RCV estimates. The corrected formula was a mouse-click away, as reflected in this screenshot of Xactimate's depreciation options:



After Xactimate revised the estimates using the updated formula (RCV – material costs depreciation), State Farm issued payments to the insureds to refund the previously depreciated labor costs. No one at State Farm questioned the accuracy of the disbursed payments, and MacMillan testified that he was pleased by the program's efficiency. State Farm records show that it took an average of "15 minutes" to complete each review. Most policyholders refunded

by the program received payments of less than $1,000, and many received payments for amounts less than the fee for filing suit in state court.

The district court held a hearing on Plaintiffs' pending motion for class certification in which Plaintiffs proposed calculating damages with the following formula:

DAMAGES = (WITHHELD LABOR DEPRECIATION AMOUNT NOT RESULTING IN TOTAL CLAIM EXCEEDING POLICY LIMITS − RECOVERED LABOR DEPRECIATION) + PREJUDGMENT INTEREST

The inputs used in this damages formula, save "prejudgment interest," are the same inputs State Farm used (by unchecking a box in Xactimate) to refund insureds for depreciated labor costs during the gap period.

The district court granted the motion for class certification, amending the class definition as follows:

> All persons and entities that received "actual cash value" payments, directly or indirectly, from State Farm Fire and Casualty Company ("State Farm") for loss or damage to a dwelling or other structure located in the Commonwealth of Kentucky, such payments arising from events that occurred from February 28, 2013 through July 25, 2015, where the cost of labor was depreciated. Excluded from the class are: (1) all persons and entities that received payment from State Farm in the full amount of insurance shown on the declarations page; (2) State Farm and its affiliates, officers, and directors; (3) members of the judiciary and their staff to whom this action is assigned; and (4) Plaintiffs' counsel.

(R. 191, Order, PageID 8263)  In this second appeal, State Farm challenges the certification order.

## II. ANALYSIS

A "district court has broad discretion to decide whether to certify a class." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 850 (6th Cir. 2013).  Appellate review of a certification order is "narrow" and "very limited."  *Id*. (quoting *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir.2004)).  We will "reverse the class certification decision in this case only if [State Farm] makes a strong showing that the district court's decision amounted to a clear abuse of discretion." *Id*. "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the

wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 502 (6th Cir. 2019).

A party seeking class certification must demonstrate compliance with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To do so, the putative class must meet Rule 23(a)'s "four requirements—numerosity, commonality, typicality, and adequate representation." *Id.* at 349; Fed. R. Civ. P. 23(a). And the putative class must show that it fits within one of the three subsections of Rule 23(b). *Zehentbauer*, 935 F.3d at 503; Fed. R. Civ. P. 23(b).

Here, the district court certified the class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

State Farm argues that Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement because the common liability question has already been answered in Plaintiffs' favor. It likewise claims that the putative class cannot meet Rule 23(b)(3)'s predominance and superiority requirements because individualized damages inquiries will overwhelm the common liability question. State Farm also asserts that Plaintiffs' class is not ascertainable. Finally, it argues that the district court abused its discretion by failing to consider striking Plaintiffs' expert before it certified the class. We address each issue in turn.

## A. Commonality

To satisfy commonality, Plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). "[T]here need be only one common question to certify a class." *In re Whirlpool Corp.*, 722 F.3d at 853; *see also Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do.").

Plaintiffs argue that their claims share a common legal question: whether State Farm breached its contracts by depreciating labor from Plaintiffs' ACV payments. State Farm argues that, because this issue has already been decided in Plaintiffs' favor, the putative class cannot satisfy Rule 23(a)'s commonality requirement.

Commonality—whether a common question is capable of classwide resolution—is not undermined when a party concedes an issue, or the issue is resolved in the plaintiffs' favor. *See Newberg on Class Actions* 5th Ed. § 4:51 (Dec. 2019 Update); *see also Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 751 (6th Cir. 2018) (affirming a class certification order where the district court first denied the defendant's motion to dismiss and later certified the class); *see In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("Even resolved questions continue to implicate the 'common nucleus of operative facts and issues.'"); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000) ("[T]he fact that an issue has been resolved on summary judgment does not remove it from the predominance calculus.").

In support of its position to the contrary, State Farm cites *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011) and *Sprague v. General Motors Corp.*, 133 F.3d 388, 395 (6th Cir. 1998) (en banc). As a preliminary matter, commonality was not at issue in *Pipefitters*, 654 F.3d at 621 (reversing certification order because class action was not the superior method of adjudication); thus, its discussion on commonality is dicta and not controlling, *Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015).

In any case, State Farm misconstrues *Pipefitters* and *Sprague* as standing for the broad proposition that commonality cannot be satisfied when a court has already decided common merits issues in plaintiffs' favor. In *Sprague*, an ERISA case, we explained that when the suit was initiated, the claims of all members of the purported class shared "certain common issues." 133 F.3d at 397. For example, all their benefits "were governed by the same welfare plan, and the proper interpretation of the plan was at issue." *Id.* When the district court considered class certification, however, the common questions had been decided in the *defendant's* favor. *Id.* at 397–98. The remaining theories on which the plaintiffs could proceed—a bilateral contract and an estoppel theory—did not involve common issues. *Id.* at 398.

The premise of the bilateral contract theory was that defendant "had made an individual 'side deal' with each early retiree." *Id.* Analyzing each side deal would have involved considering the pertinent documents each retiree signed and the individualized representations the defendant made to each. The evidence showed that, among other particular circumstances, a retiree "might have heard [defendant] officials speak about the special early retirement program at a group meeting, or might have seen a program summary compiled by [defendant], or might have had a one-on-one meeting with his supervisor or with a [defendant] benefits person." *Id.* The putative class's "estoppel theory was even less susceptible to class-wide treatment" because estoppel claims "require[] proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment." *Id.* Ultimately, the putative class lacked commonality in *Sprague* not because a common question had previously been answered in plaintiffs' favor, but because all common questions had been answered in *defendant's* favor such that no remaining common issue was central to the validity of plaintiffs' claims.

Likewise, in *Pipefitters*, another ERISA action, the certified questions would have required individualized proof, which varied from plaintiff to plaintiff. 654 F.3d at 629. Specifically, the plaintiffs needed individualized proof that the defendant was an ERISA fiduciary at the time it collected a transfer subsidy fee from each of its administrative service contract customers based on varying contract terms. *Id.* at 631. Without that individualized proof, each plaintiff could not establish her claim.

In contrast, here, Plaintiffs' claims share a common legal question central to the validity of each of the putative class member's claims: whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their ACV payments. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710 (5th Cir. 2020) ("there is the common question of withholding labor depreciation"); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) ("Plaintiffs' theory is that State Farm violated its contractual obligations by depreciating both materials and labor when calculating ACV, thereby reducing the size of their ACV payments. The viability of this theory is a common question well suited to classwide resolution."). No individualized proof is necessary to resolve this liability question on a

classwide basis because State Farm does not dispute that until July 2015, it depreciated labor costs when calculating ACVs.

The district court did not abuse its discretion in finding that Plaintiffs satisfied Rule 23(a)'s commonality requirement.

## B. Predominance

A Rule 23(b)(3) class must also show that common questions will *predominate* over individual ones. *Young*, 693 F.3d at 544. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Id.* (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011)). A class may be certified based on a predominant common issue "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005). In *Young v. Nationwide Mutual Insurance Co.*, we explained "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." 693 F.3d at 544 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). And in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, we concluded that "when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." 722 F.3d at 850 (quoting *Comcast Corp. v. Behrend,* 569 U.S. 27, 41 (2013) (Ginsburg, J., dissenting)).

Although "individual damages calculations do not preclude class certification under Rule 23(b)(3)," *In re Whirlpool,* 722 F.3d at 850, a court must ensure at the class-certification stage that plaintiffs' formula calculates damages based only on their theory of liability, *Rikos v. P&G Co.*, 799 F.3d 497, 523 (6th Cir. 2015).

Here, the district court concluded that the common labor depreciation question predominates over individual questions even though Plaintiffs' damages will vary. The court

found that Plaintiffs' damages formula is consistent with their theory of liability—that State Farm breached its standard-form insurance contract by improperly deducting depreciation of labor costs from ACV payments.  Plaintiffs claim that State Farm should refund to them the depreciated labor costs and pay prejudgment interest and thus propose calculating damages with the following formula:

> DAMAGES = (WITHHELD LABOR DEPRECIATION AMOUNT NOT RESULTING IN TOTAL CLAIM EXCEEDING POLICY LIMITS − RECOVERED LABOR DEPRECIATION) + PREJUDGMENT INTEREST

State Farm argues that individual issues predominate over the common labor depreciation issue because it may have miscalculated ACV payments based on individualized errors unrelated to depreciating labor costs.  Put another way, State Farm intends to defend against the claims of individual class members by proving that some insureds were not damaged because it either overestimated ACV payments to such a degree that the deduction of labor depreciation resulted in no damages or it mistakenly reimbursed labor depreciation costs to RCV claimants for more than they were owed.

Two other courts of appeals have rejected State Farm's argument in cases nearly identical to this case.  In *Mitchell v. State Farm Fire & Casualty Co.*, 954 F.3d 700, 711 (5th Cir. 2020), the Fifth Circuit recently reasoned that "any overestimation by State Farm should not be a factor in determining damage awards" because those errors are only relevant where insureds challenge RCV estimates; otherwise, insureds are under no obligation to use the ACV payment.  In *Stuart v. State Farm Fire & Casualty Co.*, 910 F.3d 371, 376–77 (8th Cir. 2018), the Eighth Circuit explained that the "insureds were under no obligation to use the ACV payment to actually repair or replace the damaged property, so any overestimation by State Farm simply operates as an error in the insured's favor."

Like our sister circuits, we are not persuaded by State Farm's argument that its own potential overestimations show that individualized inquiries predominate.  Here, class members were under no obligation to make repairs or use the ACV payment.  Under Kentucky law, insurance contracts are "construed strictly against the insurer and liberally in favor of the insured." *Hicks*, 751 F. App'x at 709.  "[S]o any overestimation by State Farm simply operates

as an error in the insured's favor." *Stuart*, 910 F.3d at 377; *see also Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962–63 (6th Cir. 2005) ("[E]ven if [an insured] chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss"). State Farm's defense—that it miscalculated ACV payments based on errors unrelated to labor depreciation—may therefore itself a common legal question capable of classwide resolution.

State Farm then argues that the policy language requires individualized inquiries. The policy provides that, before repairs, State Farm owes the "actual cash value at the time of the loss of the damaged part of the property, … not to exceed the cost to repair or replace the damaged part of the property." (R. 35-3, Hicks Policy, PageID 1179) Plaintiffs assert that this "cost to repair" cap means that an ACV payment cannot exceed the estimated replacement cost value (RCV). But again, insureds do not have to use ACV payments, so the cap on these payments must be based on the RCV estimate rather than documentation showing the repairs made and the costs incurred. The *Stuart* and *Mitchell* courts arrived at the same conclusion, holding that any overestimation by State Farm would operate as an error in the insured's favor even though the policies at issue capped ACV payments based on the cost to repair or replace damage. *See Stuart*, 910 F.3d at 373–74 (analyzing contract that obligated State Farm to "pay the 'actual cash value at the time of the loss of the damaged part of the property,' up to the policy's liability limit, '*not to exceed the cost to repair or replace the damaged part of the property*'" (emphasis added)); *Mitchell*, 954 F.3d at 711 n.15 (rejecting "State Farm's argument based on the policy's payment cap" because "insureds 'don't have to return' any of their ACV payment if they make no claim for RCV payment and if they don't dispute State Farm's estimate of the cost of replacement."). The record sufficiently supports Plaintiffs' interpretation of the policy language, an interpretation also adopted by our sister circuits. The district court did not abuse its discretion in adopting Plaintiffs' position on the policy language.

Based on the Fifth Circuit's class definition in *Mitchell*, the dissent asserts that State Farm's arguments against predominance must be analyzed differently for class members who, like Plaintiff Hicks, have been reimbursed for previously withheld labor depreciation costs. This distinction does not change our analysis because, as in *Stuart*, the policy language here entitles

all policyholders to the "actual cash value *at the time of the loss of the damaged part of the property*." The class definition here is materially identical to the definition in *Stuart*. Whether the class members chose to repair, like Hicks, or chose not to, like Williams, a common contract question predominates—did State Farm withhold labor depreciation costs from class members' ACV payments in violation of Kentucky law. Insureds are entitled to what they bargained for: the correct ACV payment at the time of the loss. And common proof may likely be used to resolve any question because an overestimation error would operate in favor of the insureds. *Stuart*, 910 F.3d at 377.

Even if we did accept State Farm's position that it should have an opportunity to prove individualized defenses based on its unrelated errors, the record contains no evidence that this issue would affect the class—whether distinguishing between insureds like Hicks and Williams or not. *See id.* To the contrary, no one at State Farm questioned the accuracy of the payments it issued through its 2015 refund program. It is thus reasonable to infer that State Farm did not have any problem with refunds causing ACV payments to exceed estimated replacement costs for the nearly 2,000 claimants it refunded through its program—a program that serves as a model for how State Farm would pay damages to class members here. And should the calculation of damages for reimbursed class members involve more than a mouse click on Xactimate, any need for more time intensive review does not affect the predominance inquiry. *Young*, 693 F.3d at 540. Otherwise, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Id.* If this sub-issue were to become relevant at the merits stage, we leave it to the district court (subject to abuse of discretion review) to determine whether changes to Plaintiffs' class definition or the addition of sub-classes resolves any issue. The district court has the power to amend the class definition at any time before judgment. *See Stuart*, 910 F.3d at 377; Fed. R. Civ. P. 23(c)(1)(C).

State Farm further argues that we should analogize to *In re State Farm Fire & Casualty Co. (LaBrier)*, 872 F.3d 567 (8th Cir. 2017), an Eighth Circuit decision issued prior to and distinguished by the Eighth Circuit's opinion in *Stuart*. Plaintiffs in *LaBrier*, a putative class of Missouri homeowners, raised the same labor depreciation claim against State Farm presented in

*Stuart* and here.  Missouri law defines ACV as "the difference between the reasonable value of the property immediately before and immediately after the loss." *Id.* at 573 (quoting *Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385, 390 (Mo. Ct. App. 2007)).  As the Eighth Circuit explained in distinguishing *LaBrier* in *Stuart*, "[d]ifferent methods [could] be used to estimate the fair market value of a property before and after a destructive event, and the policies at issue in *LaBrier* did not specify which should be used." *Stuart*, 910 F.3d at 376.  State Farm chose a method of estimating fair market value that set the RCV and then subtracted depreciation in *LaBrier*.  *Id.*  The class in *LaBrier* could therefore "not show predominance because whether State Farm's chosen methodology produced a reasonable estimate of the difference in a property's value before and after a loss was a question for the jury to determine on a case-by-case basis."  *Id.*  "In other words, because the contracts did not specify how ACV payments would be calculated, whether State Farm was in breach would depend on whether its methodology produced a reasonable estimate of ACV, as defined by Missouri law, in an individual case." *Id.*  That question could not be answered on a class basis, making certification inappropriate under Rule 23(b)(3).

The same "critical differences" that distinguished *LaBrier* from the Eighth Circuit's more recent opinion in *Stuart* make *LaBrier* unhelpful to State Farm here.  There, Missouri law obligated State Farm "merely to arrive at a 'reasonable' estimate of the property's value before and after the loss." *Id.*  Here, Kentucky law obligates State Farm to calculate the ACV payment by "using the replacement cost minus depreciation formula." *Hicks*, 751 F. App'x at 707.  Labor costs cannot be depreciated under that language because a layperson "could reasonably interpret the term depreciation to include only the cost of materials," and Kentucky law dictates that ambiguity in insurance contracts must be resolved in the insured's favor. *Id.* at 709.  The parties here agree that their contracts incorporate Kentucky's ACV formula, under which, in contrast to Missouri's contracts, "[t]here is no need for a jury to evaluate conflicting estimates based on different methodologies." *Stuart*, 910 F.3d at 376.

State Farm also argues that putative class members who, like Hicks, have completed their repairs and received RCV payments with recovered depreciation have suffered no injury and lack standing.  In *Zehentbauer Family Land, LP v. Chesapeake Exploration, L.L.C.*, however, we

explained the need to distinguish merits-based arguments from those appropriate for resolution at the class-certification stage. 935 F.3d at 507. In the same factual situation presented here, *Stuart* determined that "[a]lthough couched as disputes about standing, State Farm's arguments really go to the merits of Plaintiffs' claims" because Plaintiffs' theory of liability is that "all individuals who received an improperly-depreciated ACV payment suffered a legal injury—breach of contract—regardless of whether the ACV payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property." *Stuart*, 910 F.3d at 377. And, as the Supreme Court has reminded, "one must not confuse weakness on the merits with absence of Article III standing." *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)). State Farm's standing argument improperly conflates Article III's injury-in-fact requirement with the merits. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) ("[A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016))).

Ultimately, "[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question, and the district court has the power to amend the class definition at any time before judgment." *Stuart*, 910 F.3d at 377 (citing Fed. R. Civ. P. 23(c)(1)(C)). In any case, Plaintiffs' complaint and damages formula include the claim that even those class members who recovered depreciated labor costs are eligible for damages in the form of prejudgment interest.

On this record, and in light of our precedent and that of our sister circuits, the district court did not abuse its discretion in concluding that a common question predominates over individualized issues.

## C. Superiority

Rule 23(b)(3) also requires that class litigation is a superior way to resolve the controversy. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young*, 693 F.3d at 545 (quoting *Amchem Prod., Inc. v.*

*Windsor,* 521 U.S. 591, 617 (1997)).  In assessing superiority, we consider "the difficulties likely to be encountered in the management of a class action." *Beattie*, 511 F.3d at 567 (quoting Fed. R. Civ. P. 23(b)(3)).  We also look to the purpose of class action litigation.  "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Young*, 693 F.3d at 545 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

"Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.* (quoting *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)).  A class action is not a superior form of adjudication, however, where many individual inquiries are necessary.  *Id.*  But, as with predominance, superiority can be satisfied "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  7AA Wright, Miller & Kane, *Federal Practice and Procedure* § 1778, at 123–24; *see also Stuart*, 910 F.3d at 376 ("The potential need for individualized damages inquiries is not sufficient to overcome the district court's findings of predominance and superiority.").  And when a threshold common issue predominates, a class action is often the preferable form of litigation.  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class.").

To support its argument that Plaintiffs fail to show class litigation is a superior method of adjudication, State Farm turns again to its claim that individual inquiries predominate.  As discussed above, this argument is without merit.  The district court appropriately concluded that superiority is satisfied here because a threshold common issue predominates (i.e. whether State Farm improperly depreciated labor costs from ACV payments) and because Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible.  As the court correctly observed, the payments State Farm made to Kentucky homeowners for depreciation costs through its 2015 refund program were generally less than  $1,000.00 and a "significant

portion" of the refunds were for amounts "less than the filing fee for initiating an action in state court."  (R. 191, PageID 8268–69) (citing R. 115-6).

We thus cannot conclude that the district court abused its discretion in finding class litigation to be the superior method of adjudication.

### D.  Class Membership is Ascertainable

"Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).  To satisfy this requirement, a "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  *Young*, 693 F.3d at 537–38 (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).

For its 2015 refund program, State Farm applied objective standards through its long-employed Xactimate program and readily ascertained the number of claimants to be repaid labor depreciation.  Those same objective standards may also serve as inputs for Plaintiffs' proposed class definition.  State Farm had all the necessary information to identify the Kentucky claims to be refunded during the gap period, to make the simple changes to the parameters in Xactimate to calculate the ACV reimbursements for those 1,854 claimants, and to assure that labor depreciation would not be subtracted from replacement cost estimates in the future.  The class is ascertainable by reference to the same objective criteria. *Rikos*, 799 F.3d at 525.

### E.  Motion to Strike

State Farm further argues that the district court abused its discretion by declining to analyze Defendant's Motion to Strike Saul Solomon's Opinions and Testimony before ruling on Plaintiffs' Motion for Class Certification.  State Farm's motion to strike included a *Daubert* challenge.

The Supreme Court has not yet decided whether a district court must undertake a *Daubert* analysis at the class-certification stage when an expert's report is critical to the class certification analysis.  *Comcast*, 569 U.S. at 39–40 (Ginsburg, J., dissenting) (describing how the Court

granted certiorari to resolve the *Daubert* question but did not ultimately reach its merits). The courts of appeals have taken different approaches to this issue. *Compare Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815−16 (7th Cir. 2010) (requiring a district court to rule on challenges to an expert's qualifications if the expert's report is "critical to class certification"); *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) (same); *with In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 612 (8th Cir. 2011) (approving a certification order without a full *Daubert* analysis and explaining the impracticalities of requiring a district court to consider the admissibility of evidence at the class certification stage); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1003 (9th Cir. 2018) (finding a district court abused its discretion by limiting its class certification analysis with review of admissible evidence only).[1]

We have yet to settle this matter. *In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *3 (6th Cir. Sept. 29, 2014). This case does not present an opportunity to do so because the district court did not rely on Solomon's expert opinion in ruling on class certification. To be sure, the court cited to the expert's proposed formula for calculating damages, but the court did not rely on Solomon's testimony to determine that this formula is consistent with Plaintiffs' theory of liability. Instead, other information in the record supports that conclusion and informs the formula for calculating damages. Specifically, State Farm's own refund program supports the district court's conclusion that Plaintiffs' proposed formula for calculating damages satisfies Rule 23's requirements. State Farm's refund program used the same model that Plaintiffs propose for calculating damages.[2]

In sum, the district court did not abuse its discretion in declining to rule on State Farm's Motion to Strike before deciding whether to certify Plaintiffs' proposed class.

---

[1]*Sali* did not involve a *Daubert* challenge, but its broad holding—that "the nature of the 'evidentiary proof' a plaintiff must submit in support of class certification . . . need not be admissible evidence"—means no full *Daubert* analysis is required at the class certification stage in the Ninth Circuit. 909 F.3d at 1004. While "a district court should evaluate admissibility under the standard set forth in *Daubert*," "admissibility must not be dispositive" of the class certification inquiry. *Id.* at 1006 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)). "Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.*

[2]The only difference between the two is the "prejudgment interest" input, which is supported by Kentucky's consumer protection statute. Ky. Rev. Stat. Ann. § 304.12-235.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of class certification and **REMAND** for further proceedings.

---

**CONCURRING IN THE JUDGMENT IN PART AND DISSENTING IN PART**

---

McKEAGUE, Circuit Judge, concurring in the judgment in part and dissenting in part. While I agree with some of what the majority concludes, I believe we should insist on a more rigorous analysis of the issues both here and at the district court level. For while "class actions can enhance enforcement" of the law, they can also "unfairly 'plac[e] pressure on the defendant to settle even unmeritorious claims[.]'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (quotations omitted). That's not to say that I shed tears for State Farm. But some of the majority's analysis is disappointing. We must instead be more precise about the law, the claims, and the common legal and factual questions at stake. Because, with such precision, I am convinced that the district court may have certified a class that was too broad for common issues to predominate over individual ones. I would accordingly vacate the certification order in part and remand for a more rigorous analysis.

**I**

The only claim the insureds allege in their complaint is for breach of contract under Kentucky law, which requires allegations of "the existence of a contract, of a breach of that contract, and that the breach caused damages." *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019). So let's examine the contracts—the insurance policies—first. State Farm agreed to pay the insureds for damage to their property as follows:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property up to the applicable limit of liability . . . , not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability . . . , whichever is less[.]

Hicks Policy, R. 35-3, PageID 1179.

The first provision is subject to differing interpretations.  The insureds contend that under Kentucky law, the provision required State Farm to pay them an estimated actual cash value payment that does not deduct for labor depreciation.  Thus, under the insureds' theory, State Farm breached by deducting labor depreciation, even though the payment was just an estimate.  State Farm's "custom and practice" under this provision in all its insurance policies "has been, and is, to make such payments based upon [its] calculation of the [actual cash value] for the loss, net of any applicable deductible"—not based on the real cost to repair or replace, or any other metric.  Complaint at ¶ 66, R. 55, PageID 1754.  Simply put, even if the estimate including the labor depreciation deduction exceeded the actual cost to repair their property, that's what the insureds allege they were contractually entitled to.  *See Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 711 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376–77 (8th Cir. 2018).

State Farm responds that this interpretation reads out the clause closing the first provision:  "not to exceed the cost to repair or replace the damaged part of the property[.]"  According to State Farm, even if it deducted labor depreciation from estimated actual cash value payments, if those payments exceeded the actual cost to repair or replace there are no damages and thus no breach.  (In other words, State Farm was contractually obligated to be a good neighbor, not a great one.)  So not only will State Farm not be liable in overpayment cases, individual issues regarding actual costs to repair or replace, the value of the insureds' damaged properties, and so forth will predominate over common issues—each class member would have to individually show underpayment to prove breach—thereby making class certification inappropriate.  *See* Appellant Br. at 34–41.

The majority would have you believe that the insureds are right, and State Farm's liability on this score is a foregone conclusion, because in Kentucky "insurance contracts are construed strictly against the insurer and liberally in favor of the insured."  That's not the case.  First, an insurance contract has to be *ambiguous* to receive the strict-construction treatment.  *Aetna Ins. Co. v. Jackson*, 55 Ky. 242, 262 (1855).  Second, the insureds' argument doesn't appear to be based on the text of the insurance policies or any resulting ambiguity so much as State Farm's "custom and practice" in paying out insurance claims.  Complaint at ¶ 66, R. 55,

PageID 1754. And third, our job here is simply to review the district court's consideration of the "type of evidence [that] will be presented by the parties" and "how a trial on the merits would be conducted if a class were certified." *Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783, 785–86 (6th Cir. 2005) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *Bell Atl. Corp. v. AT&T*, 339 F.3d 294, 302 (5th Cir. 2003)). We don't decide merits issues, like whether the insurance policies are actually ambiguous. And all that has been decided so far is that State Farm "miscalculated" actual cash value payments by deducting labor depreciation, *Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703, 704 (6th Cir. 2018)—not that State Farm categorically breached by so miscalculating, or that its interpretation of the insurance policies is wrong.

The right question to ask, then, is whether this clash in interpretation spells doom for class certification. And I agree with the majority that the answer is no. For this presents a question of law that can be addressed on a class-wide basis (at least as to those who did not repair their property and accepted their estimated actual cash value payment including its labor depreciation deduction as the actual value): whether the insureds' interpretation is correct. If it turns out, as the insureds suggest, that it was State Farm's practice to use a computer program to estimate its actual cash value payments without later confirming the actual cash value and without regard to actual costs to repair or replace, then proceeding as a class makes sense. All those who stuck with their estimated payments would be entitled to the labor depreciation that was deducted along with prejudgment interest. If, on the other hand, it turns out that State Farm's interpretation is correct—that is, if breach must be shown by underpayment rather than mere miscalculation—then individual factual issues will necessarily predominate over common ones and the district court should decertify the class. But this potential for decertification after resolution of a common issue doesn't mean that the class should be decertified now.

## II

All this is to say that the majority partly stumbles on the right result, but for the wrong reasons. I say "partly" because there is one more group of insureds I haven't addressed yet: those insureds who didn't stick with their estimated actual cash value payments. Recall that there are two provisions to the insurance policies. The first is the actual cash value provision. The second is the "replacement cost value" provision, which says that "when the repair or

replacement" of an insured's damaged property "is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability . . . , whichever is less[.]" Hicks Policy, R. 35-3, PageID 1179. Payments made under this provision thus do not deduct any depreciation: if an insured buys a new roof, State Farm pays for a new roof, even if the estimated actual cash value payment covered only a ten-year-old roof. *See Mitchell*, 954 F.3d at 711 n.14.

Imagine an insured's house burns down. The insured receives an estimated actual cash value payment from State Farm. The insured can now do one of two things. She can stick with the estimated actual cash value payment and do with it whatever she desires, without coming back to State Farm for more. (Those are the people I addressed before, and class certification as to them is appropriate.) Or, she can dispute the estimated payment by, well, disputing it, or by asking for more money after repairing or replacing her house through the replacement cost value provision. Crucially, this second option triggers State Farm's ability to "dispute or adjust its initial estimate of the cost of replacement." *Mitchell*, 954 F.3d at 711.

Thus it appears that those insureds who disputed their estimated actual cash value payments—by disputing the payment directly or requesting a replacement cost value payment— are entitled only to the actual cost of repair or replacement, never an estimate in their favor. That would mean each insured in this situation will need to prove underpayment in order to prove breach. This is why the class definition in *Mitchell*, one of the cases the majority relies on, excluded these insureds. *Id.* at 711 & n.16. And in *Stuart*, the other main case the majority relies on, the district court at least made a finding that payment issues involving these insureds "could be resolved using common proof." *Stuart*, 910 F.3d at 376.

Here, we simply have no analysis from the district court about these insureds who disputed their estimated payments. We don't know if issues regarding these insureds can be resolved with common proof, like in *Stuart*. And if they can't be, we don't know whether such individual issues would predominate over common ones. That means we should vacate in part and remand for a more rigorous analysis. *See Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000).

The majority says the distinction I'm making—which, bear in mind, the Fifth and Eighth Circuits also made in *Mitchell* and *Stuart*, respectively—doesn't matter because "the policy language here entitles all policyholders to the 'actual cash value *at the time of the loss of the damaged part of the property*.'" I wasn't aware of the "selective emphasis" canon of contract interpretation. Regardless, and as I said before, it's improper for us to settle contract disputes now. Even assuming the quoted and emphasized language the majority plucks out of the insurance policies means what the majority thinks it means—that State Farm had to give, at the time of property damage, possibly overestimated actual cash value payments to insureds (rather than the more natural reading, i.e., that State Farm was to calculate actual cash value as of the time of damage)—individualized proof of liability would be required all the same. Precisely when State Farm was supposed to pay out is beside the point. State Farm still gets to "dispute or adjust its initial estimate of the cost of replacement" when an insured challenges the estimate, *Mitchell*, 954 F.3d at 711, meaning an initial overestimation (that is, overpayment even with labor depreciation deducted) cannot be a breach.

Nor is this really a concern over "time intensive review" of class members' claims, as the majority seems to suggest. While individualized damages inquiries will not necessarily imperil predominance, individualized proof of the defendant's liability will. *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011). Here, State Farm cannot be liable unless at least some damages resulted from a breach. *See EQT Prod. Co.*, 590 S.W.3d at 293. That may or may not involve complicated evidence. What matters is that the insureds' theory of liability requires no individualized proof for those who stuck with estimated actual cash value payments, as I explained before. But their theory of liability does seem to require such proof for those insureds who disputed their estimated payments, which was overlooked by the district court.

I am of course not suggesting that the district court did a bad job. The veteran district court judge here issued a thorough and well-reasoned certification decision. But the decision didn't distinguish between the two types of insureds in this case. A technical point, no doubt, but one that still warrants vacatur in part. Even without vacatur, the majority acknowledges that this

point is appropriate for the district court to consider in amending the class definition before judgment, and I trust that the district court will do so.

### III

Because the majority's analysis is flawed and partly reaches the wrong result, I respectfully concur in the judgment in part and dissent in part.